IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

------------------------------------------------------- :
                                                        : CASE NO.  1:10 cr 00432
UNITED STATES OF AMERICA,                               :
                                                        :
                                           Plaintiff,   : MEMORANDUM AND ORDER
                                                        : DENYING THE DEFENDANTS'
              -vs-                                      : MOTIONS TO SUPPRESS
                                                        :
                                                        :
MARVIN P. TANNER, et al,                                :
                                                        :
                                          Defendants.
------------------------------------------------------- 

UNITED STATES DISTRICT JUDGE LESLEY WELLS

     Before the Court are two motions to suppress, filed by defendants Marvin P. Tanner and Nathan C. Feagin, respectively.[1] (Doc. 244, 379). The defendants maintain that the government acted without probable cause and in violation of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2521 ("Title III"), when it used wiretaps to intercept telephonic communications in which they were participants. The defendants accordingly maintain that this evidence should be suppressed. The government has filed a brief in opposition. (Doc. 649). For the reasons that follow, the motions will be denied.

---

[1]     Defendant Ronnie J. Carter initially joined in Mr. Feagin's motion, but he has since pled guilty to the charges in this matter. (See Doc. 666). Mr. Feagin indicates that he joins in Mr. Tanner's motion.

**I. Introduction**

On 29 September 2010, Mr. Tanner and Mr. Feagin (collectively, "defendants"), along with twenty-one others, were indicted on drug conspiracy charges in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846. (Doc. 1). The defendants were also charged with the unlawful use of a communication facility in violation of 21 U.S.C. § 843(b). The indictment alleges that defendant Damell Owens obtained multi-kilogram shipments of cocaine and cocaine base, which Mr. Tanner, Mr. Feagin, and others helped transport, store, process, and distribute. (See Doc. 1).

This information came to the attention of law enforcement as a result of a wide-ranging criminal investigation which employed a number of investigative methods including wiretaps. On five occasions, the government applied for authorization to intercept telephone communications in connection with four cellular telephone numbers ("target telephones") allegedly being used to facilitate the drug conspiracy. The applications were supported by affidavit. Orders authorizing the wiretaps were issued on 13 January 2010, 17 February 2010, 31 March 2010, 29 April 2010, and 26 May 2010. These orders remain under seal.

The defendants challenge the legality of the wiretaps and argue that they have the standing to do so as "aggrieved persons" pursuant 18 U.S.C. § 2518(10)(a). An "aggrieved person" is "a person who was a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed." 18 U.S.C. § 2510(11). In this instance, the defendants have standing to challenge the

admissibility of the wiretapped conversations in which they were participants. See United States v. Cooper, 868 F.2d 1505, 1509-10 (6th Cir. 1989).

### II. Law and Argument

#### A. Requests for discovery

Preliminarily, both defendants request a number of discovery materials that they maintain are necessary to properly challenge the wiretaps. They seek: (1) all recorded calls, including non-pertinent calls, obtained in the course of the investigation, along with their transcripts; (2) all wiretap progress reports; (3) all orders sealing the recordings in this case; and (4) all pen registers and trap and trace applications and orders. (Doc. 244, p. 3-4; Doc. 379, pp. 2-3). Each request will be addressed in turn.

First, the defendants are not entitled to recordings and transcripts beyond those described the Federal Rules of Criminal Procedure. Under the rules, the government must disclose and make available any relevant recorded statement by a defendant, which is known to the government and in its possession. Fed. R. Crim. P. 16(a). In this instance, the defendants do not explain how the government has failed to fulfill its duty under Rule 16(a), and they cite no authority that would entitle them to discovery beyond what the rule describes in this regard. In any event, it appears that this request is moot, since the government states that it has already provided copies and transcripts of all calls obtained during the investigation. (Doc. 649, p. 4).

As for the wiretap progress reports, the defendants cite no authority that would allow their discovery. Progress reports are not required under the wiretap statute. See 18 U.S.C. § 2518. Rather, they are a matter in the discretion of the issuing judge. See

3

18 U.S.C. § 2518(6). As a consequence, "the reports are not related to compliance with the statute." United States v. Pray, 734 F.Supp.2d 158, 160 (D.D.C. 2010). Moreover, because the reports are "documents made by an attorney for the government or other government agent in connection with investigating or prosecuting [a] case," they are excluded from discovery pursuant to Fed. R. Crim. P. 16(a)(2). See United States v. McCafferty, 772 F.Supp.2d 863, 878-79 (N.D. Ohio 2011). Therefore, the defendants are not entitled to discovery of the wiretap progress reports.

Next, the defendants' request for discovery of the orders sealing the wiretap recordings is moot, because the government agreed to provide copies of all the sealing orders. (Doc. 649, p. 5).

Finally, the defendants seek discovery of the pen registers and trap and trace applications, and the orders authorizing them. Mr. Tanner states that discovery of these items "would enable [him] to properly challenge the authorizations of the wiretap in this case and/or the manner in which the wiretap investigation was conducted." (Doc. 244, p. 4). Because the defendants have not demonstrated how these items are material to their challenge to the wiretaps pursuant to Fed. R. Crim. P. 16(a)(1)(E), their request is denied.

### B. Probable Cause

The defendants raise the question whether the wiretaps are supported by probable cause. The probable cause standard for a wiretap is similar to that for a search warrant. United States v. Alfano, 838 F.2d 158, 161 (6th Cir. 1988). When reviewing a warrant or a wiretap affidavit for probable cause, this Court considers whether the issuing judge had a "substantial basis for concluding that probable cause existed."

Illinois v. Gates, 462 U.S. 213, 238 (1983). Probable cause exists when based on the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Williams, 224 F.3d 530, 532 (6th Cir.2000) (quoting Gates, 462 U.S. at 238).

"The affidavit should be reviewed in a commonsense - rather than a hypertechnical - manner, and the court should consider whether the totality of the circumstances supports a finding of probable cause, rather than engaging in line-by-line scrutiny." United States v. Woosley, 361 F.3d 924, 926 (6th Cir. 2004). Great deference is afforded to the issuing judge's determination of probable cause, and that determination should be reversed only if the issuing judge arbitrarily exercised his discretion. Id.

In this instance, neither defendant raises a meritorious argument with respect to probable cause. First, Mr. Feagin simply states the conclusion that "there was no probable cause for the Title III wiretap on [Target Telephone 4]," without offering any meaningful argumentation. (Doc. 379, p. 7). Upon review of the challenged affidavit, the Court concludes that Mr. Feagin's assessment is incorrect. Based on the totality of the circumstances, the facts as set forth in the affidavit establish a fair probability that Target Telephone 4 was being employed in furtherance of a crime. (See 29 April 2010 Order, ¶¶34-37).

Mr. Tanner's arguments are also without merit. He begins by pointing out that, according to the affidavits, investigators used pen registers in order to record outgoing numbers dialed from target phone numbers. (Doc. 244, p. 14). The information collected by the pen registers is set forth in the affidavits, and includes the outgoing numbers and

5

the number of times each number was dialed. Mr. Tanner maintains that this data does not establish probable cause, because it fails "to establish a nexus between the target telephones and criminal activity." (Doc. 244, p. 14). He also sees an absence of probable cause based on the purportedly ambiguous language used in certain controlled telephone calls made by a confidential source. (Doc. 244, p. 15).

The problem with these contentions is that the affidavits did not rely merely on pen registers and the allegedly ambiguous conversations in order to establish probable cause. The affidavits document a wide array of investigative efforts on the part of the law enforcement, which establish probable cause for the existence of an alleged criminal drug operation and the use of the target telephones to facilitate it. Mr. Tanner does not suggest that these facts are somehow deficient in establishing probable cause. Therefore, even assuming Mr. Tanner is correct and the pen registers and cited conversations provide insufficient cause, he does not present a meaningful challenge, since he fails to explain how the affidavits are otherwise lacking. Mr. Tanner's argument is accordingly rejected.

Having reviewed the challenged affidavits, the Court concludes that based on the totality of the circumstances, the issuing judge did not arbitrarily exercise his discretion in his determination that probable cause existed.

### C. Necessity requirement

Next, the defendants maintain that the government has not satisfied Title III's necessity requirement, which requires that an application for a wiretap order contain "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or

6

to be too dangerous." 18 U.S.C. § 2518(1)(c). The purpose of the necessity requirement is "to ensure that a wiretap 'is not resorted to in situations where traditional investigative techniques would suffice to expose the crime.'" Alfano, 838 F.2d at 163 (quoting United States v. Kahn, 415 U.S. 143, 153 n. 12 (1974)). Further, the necessity requirement protects against the impermissible use of a wiretap as the "initial step in [a] criminal investigation." United States v. Giordano, 416 U.S. 505, 515 (1974).

The defendants argue that the government has not met this standard, because it did not demonstrate the need for wiretaps with "particularized necessity." The defendants maintain that the government's "bare conclusory assertions" and use of boilerplate do not demonstrate necessity under the case law. (Doc. 244, pp. 18-19).

Upon review of the challenged affidavits and the applicable law, the Court concludes that this argument has no merit. Each affidavit contains detailed descriptions of potentially useful investigative procedures typically employed in an investigation of this kind, including the use of confidential sources, controlled drug purchases, controlled telephone calls, pen registers, mail covers, trash covers, police records, search warrants, and physical surveillance, among others. The affidavits provide specific reasons, in relation to the particular facts of this case, as to why each investigative technique ultimately proved inadequate, unlikely to succeed, or too dangerous to employ, in light of the goals of the investigation. These reasons are sufficient to satisfy the necessity standard.

The defendants also argue, unpersuasively, that the necessity requirement is unfulfilled because the affidavits describe initial investigative success using less intrusive techniques. (Doc. 244, pp. 19-20; Doc. 379, p. 10). This argument has no merit

7

because whether or not the government had initial success using non-wiretap techniques is not relevant to the pivotal question in this instance. The necessity requirement is met where the affidavit provides "reasons for the investigators' belief that such non-wiretap techniques have been or will likely be inadequate." Alfano, 838 F.2d at 163-64. Although investigators had initial success using non-wiretap methods, the affidavits provide ample support for the government's assertion that these methods ultimately proved inadequate. Moreover, the affidavits plainly demonstrate that wiretaps were not being "routinely employed as the initial step in [a] criminal investigation." Giordano, 416 U.S. at 515.

The defendants also insist that cooperating witnesses and confidential informants could have continued to provide additional useful information. (Doc. 244, pp. 19-23). This assertion is belied by the affidavits, which provide specific reasons as to why the informants in this matter were, for the most part, no longer a viable investigatory tool. Further, while the defendants state that all non-wiretap methods had not been tried, "the government is not required to prove that every other conceivable method has been tried and failed or that all avenues of investigation have been exhausted." Alfano, 838 F.2d at 163.

### D. Defendants' Request for a Franks Hearing

The defendants request a Franks hearing. A Franks hearing is warranted, "if and only if (1) there is a substantial preliminary showing that specified portions of the affiant's averments are deliberately or recklessly false and (2) a finding of probable cause would not be supported by the remaining content of the affidavit when the allegedly false material is set to one side." See United States v. Campbell, 878 F.2d

8

170, 171 (6th Cir. 1989). In this instance, the defendants have not made the requisite initial showing, and their request is denied.

### E. Minimization

The defendants maintain that the government failed to minimize the intrusion on the target telephones. (Doc. 244, pp. 27-28). Title III requires that a wiretap investigation be "conducted in such a way as to minimize the interception of communications not otherwise subject to interception." 18 U.S.C. § 2518(5). In order to present a minimization challenge, a defendant must present a "prima facie pattern of abuse." United States v. Lawson, 780 F.2d 535, 540 (6th Cir. 1985). "'It is not enough for [a] defendant[ ] to identify particular calls which [he] contend[s] should not have been intercepted.'" Id. (quoting United States v. Dorfman, 542 F.Supp. 345, 391 (N.D.Ill. 1982).

In this instance, the defendants identify a single conversation related to the entertainment industry, which they contend was innocent and should not have been intercepted, but they fail to set forth any facts that would establish a pattern of abuse of Title III's minimization requirements. (Doc. 244, p. 27). The defendants' minimization argument is accordingly rejected.

### F. Overbroadness

Finally, the defendants argue that the wiretap orders are overbroad because the government was authorized to intercept calls not only from the target telephones but from "any phone it wanted." (Doc. 244, p. 29).

The defendants' assessment of the wiretap orders is incorrect. The orders identify each targeted cellular phone by a phone number, an individual mobile

9

subscriber identity number ("IMSI"), and an electronic serial number ("ESN"). One provision in the orders contemplates the possibility that a target phone number, IMSI, or ESN might change. Contrary to the defendants' assertions, however, the provision does not allow the government to listen to "any phone." Rather, the provision indicates that should a phone number, IMSI, or ESN change, the wiretap authorization would still apply. For example, the wiretap would remain effective even if one of the targets of the investigation changed his telephone number while continuing to use the same cellular phone. The orders are sufficiently specific because they apply only to the unique identifying numbers stated therein. The defendants' argument that the wiretap orders are overbroad has no merit.

### III. Conclusion

For the reasons stated above, the defendants' motions to suppress are denied. (Resolving Docs. 244, 379).


IT IS SO ORDERED.

                                              /s/ Lesley Wells  
                                      UNITED STATES DISTRICT JUDGE

Date:  6 May 2013